## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AGINCOURT GAMING, LLC, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 1:11-cv-00720-(GMS) |
| ZYNGA, INC., | § | |
| | § | FILED UNDER SEAL |
| Defendant. | § | |
| | § | |

## AGINCOURT GAMING'S ANSWERING BRIEF
## TO ZYNGA'S MOTION TO TRANSFER VENUE

Dated: March 1, 2012

FARNAN LLP
Joseph J. Farnan, Jr. (Bar No. 100245)
Brian E. Farnan (Bar No. 4089)
919 North Market Street, 12th Floor
Wilmington, DE 19801
302.777.0300
302.777.0301 (fax)
farnan@farnanlaw.com

OF COUNSEL:

William Christopher Carmody (NY State Bar No. 4539276)
Tibor L. Nagy (NY State Bar No. 4508271)
SUSMAN GODFREY LLP
560 Lexington Avenue, 15th Floor
New York, New York 10022
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
bcarmody@susmangodfrey.com
tnagy@susmangodfrey.com

David D. Shank (TX State Bar No. 24075056)
SUSMAN GODFREY LLP
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone: (214) 754-1935
Facsimile: (214) 754-1933
dshank@susmangodfrey.com

*Attorneys for Plaintiff Agincourt Gaming, LLC*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

NATURE AND STATE OF THE PROCEEDINGS ...................................................... 1

SUMMARY OF THE ARGUMENT ............................................................................. 1

STATEMENT OF FACTS ............................................................................................. 3

AUTHORITIES AND ARGUMENTS .......................................................................... 4

I.      AGINCOURT'S CHOICE OF FORUM IS ENTITLED TO PARAMOUNT
        CONSIDERATION. ........................................................................................... 6

II.     THE PRIVATE INTEREST FACTORS DO NOT WEIGH STRONGLY IN
        FAVOR OF TRANSFER. .................................................................................. 8

        A.      The convenience and availability of the witnesses is neutral. ............... 9

                1.      Zynga's employees are party witnesses whose convenience
                        receives no weight. ...................................................................... 9

                2.      The inventors and prior assignee are willing witnesses. ........... 12

        B.      Zynga has failed to show any inconvenience regarding its books and
                records. ................................................................................................. 13

        C.      Due to its relative physical and financial condition, Zynga cannot
                demonstrate that Delaware is an inconvenient forum. ......................... 16

III.    THE PUBLIC-INTEREST FACTORS DO NOT WEIGH STRONGLY IN
        FAVOR OF TRANSFER. ................................................................................ 17

CONCLUSION ............................................................................................................ 18

## TABLE OF AUTHORITIES

**Cases**

*ADE Corp. v. KLA–Tencor Corp.*,
    138 F. Supp. 2d 565 (D. Del. 2001) .................................................................................13

*Affymetrix, Inc. v. Synteni, Inc.*,
    28 F. Supp. 2d 192 (D. Del. 1998) ...........................................................................passim

*Auto. Techs. Int'l, Inc. v. Am. Honda Motor Co., Inc.*,
    No. 06-187 GMS, 2006 WL 3783477 (D. Del. Dec. 21, 2006) ........................................13

*Autodesk Can. Co. v. Assimilate, Inc.*,
    No. 08-587-SLR-LPS, 2009 WL 3151026 (D. Del. Sep. 29, 2009)..................................18

*Carl Zeiss Meditec, Inc. v. Optovue, Inc.*,
    C.A. No. 10-084-GMS, 2011 WL 1419714 (D. Del. Apr. 13, 2011)...................................9

*Coppola v. Ferrellgas, Inc.*,
    250 F.R.D. 195 (E.D. Pa. 2008) ......................................................................................13

*Foster v. Hallco Mfg. Co., Inc.*,
    947 F.2d 469 (Fed. Cir. 1991) ...........................................................................................6

*Illumina, Inc. v. Complete Genomics, Inc.*,
    No. 10-649, 2010 WL 4818083 (D. Del. Nov. 9, 2010).....................................................7

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009) .......................................................................................15

*In re Link_A_Media Devices Corp.*,
    662 F.3d 1221 (Fed. Cir. 2011) ..................................................................................passim

*In re Nintendo Co., Ltd.*,
    589 F.3d 1194 (Fed. Cir. 2009) .......................................................................................15

*Intellectual Ventures I LLC v. Altera Corp.*,
    No. 10-cv-01065-LPS, 2012 WL 297720 (D. Del. Jan. 23, 2012)................................1, 6

*Intellectual Ventures I LLC v. CheckPoint Software Techs. Ltd.*,
    797 F. Supp. 2d 472 (D. Del. 2011) ...............................................................6, 8, 13, 17

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995). .........................................................................................passim

*Micron Technology, Inc. v. Rambus Inc.*,
    645 F.3d 1311 (Fed. Cir. 2011) .............................................................................2, 8, 11

*Microsoft Corp. v. Geotag Inc.,*
    No. 11-cv-175-RGA, 2012 WL 114128 (D. Del. Jan. 13, 2012) ........................................2

*Microsoft Corp. v. Geotag Inc.,*
    No. 11-cv-175-RGA, 2012 WL 114128, at *6 (D. Del. Jan. 13, 2012) .................8, 11, 15

*Moss v. Lockheed Martin Corp.,*
    No. 3:10-cv-1659-M, 2011 WL 197624 (N.D. Tex. Jan. 18, 2011)................................16

*Nihon Tsushin Kabushiki Kaisha v. Davidson,*
    595 F. Supp. 2d 363 (D. Del. 2009) .............................................................................13

*Praxair, Inc. v. ATMI, Inc.,*
    No. Civ. 03-1158-SLR, 2004 WL 883395 (D. Del. Apr. 20, 2004)....................................7

*Schutte v. Armco Steel Corp.,*
    431 F.2d 22, 25 (3d Cir. 1970) .....................................................................................5

*Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc.,*
    No. Civ. A. 04-360 JJF, 2005 WL 441077 (D. Del. Feb. 15, 2005) ..............................6, 7

*TriStrata Tech., Inc. v. Emulgen Labs., Inc.*
    537 F. Supp. 2d 635 (D Del. 2008) ..............................................................................17

*Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.,*
    775 F. Supp. 759 (D. Del. 1991) ..................................................................................6, 7

*Winner Int'l Royalty Corp. v. Wang,*
    202 F.3d 1340 (Fed. Cir. 2000) .....................................................................................6

**Statutes**

28 U.S.C. § 1400(b)...........................................................................................................4

28 U.S.C. § 1404(a)...........................................................................................................4

**Rules**

15 Charles Alan Wright et al.,
    *Federal Practice and Procedure* § 3853 (3d ed. 2007).....................................................13

## NATURE AND STATE OF THE PROCEEDINGS

Agincourt Gaming, LLC filed this lawsuit on August 17, 2011, alleging that several of Defendant Zynga, Inc.'s online video games infringed U.S. Patent Nos. 6,758,755 (the '755 Patent) and 6,306,035 (the '035 Patent). (Compl. 2, 8, D.I. 1.) Since then, Zynga has answered the suit and asserted counterclaims (Zynga's Answer & Countercls., D.I. 11), which Agincourt has answered (Agincourt's Answer & Affirmative Defenses, D.I. 13). Now, more than four months after this case began, Zynga has moved to transfer this case to the Northern District of California, arguing that San Francisco is a more convenient and just forum than Delaware. (Zynga's Opening Br. 5, D.I. 15.) This is Agincourt's answering brief in opposition to Zynga's motion.

## SUMMARY OF THE ARGUMENT

There is no dispute that Delaware is a proper forum for this case—after all, both parties are Delaware entities and, as such, have consented to suit in Delaware courts. Zynga argues only that the Northern District of California is a more just and convenient forum than this Court. Because Agincourt is a Delaware entity, however, its choice of forum deserves paramount consideration and will only be disturbed if the relevant private and public interest factors weigh strongly in favor of transfer. Here, Zynga has failed to meet that burden, and Agincourt's choice of forum should, therefore, not be disturbed.

The Federal Circuit's recent opinion in *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011), does not diminish the importance of a plaintiff's state of incorporation to venue analysis. As courts in this District have recently recognized, *Link_A_Media* dealt with a case in which venue in Delaware was based solely on the defendant's incorporation there—a concern wholly different from a Delaware plaintiff's decision to bring suit in its state of incorporation. *See Intellectual Ventures I LLC v. Altera Corp.*, No. 10-cv-01065-LPS, 2012 WL

297720, at *5 (D. Del. Jan. 23, 2012); *Microsoft Corp. v. Geotag Inc.*, No. 11-cv-175-RGA, 2012 WL 114128, at *6 (D. Del. Jan. 13, 2012). In fact, the Federal Circuit had already analyzed the latter situation, holding that where, as here, "both parties were incorporated in Delaware, they had both willingly submitted to suit there, which weigh[ed] in favor of keeping the litigation in Delaware." *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1332 (Fed. Cir. 2011).

Zynga has not met its heavy burden of showing that the private and public interest factors strongly favor transfer. The convenience of Zynga's employees does not favor transfer because long standing case law holds that the convenience of party witnesses is afforded no weight in the venue-transfer analysis. And even if party witnesses' convenience was afforded weight, Zynga has failed to identify employees competent to testify as to most of the accused games. Similarly, the convenience of the nonparty witnesses identified by Zynga—the inventors and the prior assignee of the patents in suit—is afforded no weight in this case because ██████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████; and (2) all of the inventors have submitted declarations swearing to appear in Delaware to testify at evidentiary hearings and trial.

Likewise, neither the location of books and records nor the convenience of the parties weighs in favor of transfer in this case. Zynga has failed to show that transferring documents and data will be any more burdensome or costly if the case is tried in Delaware rather than in San Francisco. Courts in the Third Circuit and elsewhere have long held that technological advances have significantly reduced the weight of this factor, and *Link_A_Media* does not alter this long line of case law. As for convenience of the parties, this factor must be considered in light of the parties' relative physical and financial condition, and "substantial corporations" like Zynga that operate in the national and international markets must show a 'unique or unexpected' burden in

order for this factor to favor transfer. Zynga has failed to demonstrate that it faces such a burden here.

Finally, the public interest factors do not favor transfer. California has no local interest in this patent infringement case, and although transferring the case to San Francisco would relieve Zynga from the obligation to hire local counsel, the insignificance of this cost relative to Zynga's size and the magnitude of this dispute entitle this factor to little, if any, weight.

## STATEMENT OF FACTS[1]

**Zynga's Financial and Physical Condition.** Zynga is a Delaware corporation and a multi-billion dollar enterprise that sells a product accessible by customers anywhere in the world with an internet connection. (*See* Pringle Decl. ¶ 4.) Recently, Zynga raised $1 billion in capital from its initial public offering, putting the company's value at about $7 billion. (Shank Decl. ¶ 14, Ex. M.) Zynga insists that it would be "far more convenient" to litigate this case in San Francisco. (Pringle Decl. ¶ 15.). But, by Zynga's estimate, litigating this case in Delaware, as opposed to San Francisco, will cause it to incur only "$10,000–$100,000 in additional costs." (Pringle Dep. 32:13–16.)[2]

As a Delaware corporation, Zynga has agreed to submit itself to the jurisdiction of Delaware courts. Though Zynga emphasizes that it is principally located in San Francisco, it is hardly a local or regional enterprise. It has eleven domestic offices, the majority of which are outside of California, and eight international offices. (Shank Decl. ¶ 4–5, Exs. C, D.)

---

[1] In conjunction with this Answering Brief, Agincourt has separately filed objections to and a motion to strike portions of William Pringle's declaration, from which Zynga draws most of the facts it relies on. For simplicity's sake, this Brief responds to Zynga's Motion as if all of its factual assertions are supported by competent evidence. In doing so, however, Agincourt does not waive its separately filed objections.

[2] Excerpts of the Rule 30(b)(6) Deposition of William Pringle are attached as Exhibit O to the Declaration of David D. Shank. (*See* Shank Decl. ¶ 16, Ex. O.) In the interest of simplicity, citations to Pringle's deposition refer only to the page and line number of the deposition transcript.

Furthermore, ██████████████████████████████████████████
██████████████████████████████████████████████████ more than half
of Zynga's ten most popular games were created in offices outside of San Francisco (Shank
Decl. ¶ 6–12, Exs. E–K). In fact, Zynga has an especially robust presence in Baltimore,
Maryland, which is roughly seventy miles from this Court in Wilmington, Delaware. (Shank
Decl. ¶ 13, Ex. L.) Notably, Baltimore is the home Brian Reynolds, Zynga's chief game designer
and the person tasked with "lead[ing] [Zynga's] product development team." (Shank Decl. ¶¶ 2,
3, 15, Exs. A, B, N.)

      **The Willing Nonparty Witnesses.** The five named inventors of the patents in suit have
stated under penalty of perjury that they are willing to appear in Delaware to testify at hearings
and trial to the same extent as if they were subject to subpoena by this Court. (M. Kelly Decl.
¶ 4; B. Kelly Decl. ¶ 6; Petermeier Decl. ¶ 3; Kroeckel Decl. ¶ 3; Link Decl. ¶ 3.) Likewise, one
of these inventors, Bryan Kelly, is also a Senior Vice President of Bally Technologies—the
parent company to Arcade Planet, a prior assignee of the patents in suit that, according to Zynga,
has information regarding licensing practices with respect to the patents. As Senior Vice
President, Bryan Kelly's duties include the development and licensing of technologies. (B. Kelly
Decl. ¶ 2.) Because Mr. Kelly is a willing witness, Arcade Planet's location in California has no
bearing on transfer analysis in this case.

## AUTHORITIES AND ARGUMENTS

      Because Zynga is a Delaware corporation, it cannot dispute that Delaware is a proper
venue for this case. *See* 28 U.S.C. § 1400(b) ("Any civil action for patent infringement may be
brought in the judicial district where the defendant resides."). Rather, Zynga contends only that
the Court should transfer this case "[f]or the convenience of parties and witnesses, in the interest
of justice." 28 U.S.C. § 1404(a). The burden of establishing the need for such a transfer rests

with the movant, *Schutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970), and generally the plaintiff's choice of forum will be disregarded "only when the 'balance of convenience . . . is strongly in favor of [the] defendant.'" *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 198 (D. Del. 1998) (alteration in original) (quoting *Schutte*, 431 F.2d at 25). Although there is "no definitive formula" for determining when litigation would more conveniently proceed and the interests of justice be better served by transfer, courts in the Third Circuit and elsewhere routinely make that determination by considering a number of non-exclusive private and public interest factors.[3] *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

Here, Zynga attacks Agincourt's decision to file suit in Delaware on three equally unsound bases. First, Zynga argues that Agincourt's choice of forum is not entitled to the paramount level of deference a plaintiff's choice is usually afforded. Second, Zynga argues that several of the private interest factors "overwhelmingly favor transfer." (Zynga's Br. 5.) Third, Zynga argues that the public interest factors also weigh in favor of transfer. Zynga's positions on all three points ask this Court to disregard its own long-standing precedent, misapply recent Federal Circuit precedent, and ignore common sense and the realities of litigation.

---

[3] The factors private interest factors are as follows: "plaintiff's choice of forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citations omitted).
The public interest factors include: "the enforce-ability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879–80 (citations omitted).

## I.   AGINCOURT'S CHOICE OF FORUM IS ENTITLED TO PARAMOUNT CONSIDERATION.

It is "black letter law" in the Third Circuit[4] that generally "a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice . . . should not be lightly disturbed." *Schutte*, 431 F.2d at 25 (alteration in original); *accord Intellectual Ventures I LLC v. CheckPoint Software Techs. Ltd.*, 797 F. Supp. 2d 472 (D. Del. 2011); *Affymetrix*, 28 F. Supp. 2d at 197. To be afforded this high level of deference, a plaintiff need only have a "legitimate, rational reason" for its choice of forum, *Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc.*, No. Civ. A. 04-360 JJF, 2005 WL 441077, at *2 (D. Del. Feb. 15, 2005), and "[a] corporation's decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state." *Id.* (citing *Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F. Supp. 759, 764 (D. Del. 1991)). Since Agincourt is a Delaware limited liability company, it has a rational and legitimate reason for choosing to litigate in Delaware, and therefore, its choice is afforded paramount deference.

Zynga, however, argues that Agincourt's choice of forum is entitled to less than paramount deference because Agincourt is based in Texas, and therefore, according to Zynga, Delaware is not Agincourt's home forum. (Zynga's Br. 6–7, D.I. 15 (citing *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011)). This argument, based on the so-called "home turf" rule, fails on two counts. First, Zynga's argument completely ignores the Delaware cases that hold that "a corporate entity's state of incorporation [is] part of its 'home turf.'" *Intellectual Ventures I LLC v. Altera Corp.*, No. 10-cv-01065-LPS, 2012 WL 297720, at *6 (D. Del. Jan. 23, 2012); *accord CheckPoint Software*, 28 F. Supp. 2d at 479; *Praxair, Inc. v. ATMI,*

---

[4] Although "[a] district court must . . . follow Federal Circuit precedent in a case arising under the patent laws," *Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 475 (Fed. Cir. 1991), a "motion to transfer, [since it is] a procedural matter, is governed by the law of the regional circuit in which it sits," *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000).

*Inc.*, No. Civ. 03-1158-SLR, 2004 WL 883395, at *2 (D. Del. Apr. 20, 2004). Under these cases, of course, Agincourt <u>has</u> filed on its home turf.

Second, and more fundamentally, Zynga's argument fails to understand the nature of the home turf "rule" in the first place. Although some courts have held that a company's home turf is limited to its principal place of business, those courts have nevertheless afforded paramount deference to a plaintiff's decision to file in its state of incorporation because, regardless of how one defines home turf, "[a] corporation's decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state." *Trilegiant*, 2005 WL 441077, at *2; *accord Altera*, 2012 WL 297720, at *6; *Illumina, Inc. v. Complete Genomics, Inc.*, No. 10-649, 2010 WL 4818083, at *2 (D. Del. Nov. 9, 2010); *see also Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F. Supp. 759, 764 (D. Del. 1991). In other words, it is rational and legitimate for a company to file suit in its state of incorporation, just as it is rational and legitimate to file near its principal place of business. Either choice receives paramount deference, regardless of whether "home turf" is shorthand for both locations or only one. *See Trilegiant*, 2005 WL 441077, at *2.

Despite the great weight of Delaware authority to the contrary, however, Zynga insists that "reliance on a party's state of incorporation within a venue transfer analysis is . . . inappropriate," in light of the Federal Circuit's recent decision in *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011). (Zynga's Br. 1–2 (internal quotation marks omitted).) But as other courts in this district have recognized, *Link_A_Media* holds only that courts should not give the <u>defendant's</u> state of incorporation <u>dispositive</u> weight; it does not hold that any reliance on either party's state of incorporation is inappropriate. *E.g., Altera Corp.*, 2012 WL 297720, at *5 ("[T]he plaintiff in *Link_A_Media* was not a Delaware entity and, as far as can be discerned from the opinions in the case, had no connection to Delaware whatsoever. By contrast, <u>here,</u>

7

Plaintiffs are Delaware entities." (emphasis added)); *Microsoft Corp. v. Geotag Inc.*, No. 11-cv-175-RGA, 2012 WL 114128, at *6 (D. Del. Jan. 13, 2012) (finding *Link_A_Media* to hold that "when the parties, all the witnesses, and all the evidence are in one distant jurisdiction, and the only connection to Delaware is that it is the state of incorporation of the defendant, and there is no other reason for the suit to be in Delaware, the suit must be transferred" (emphasis added)).

Further, Zynga's position—that a party's state of incorporation is irrelevant to transfer analysis—directly contradicts the Federal Circuit's ruling on the issue in *Micron Technology, Inc. v. Rambus Inc.*, 645 F.3d 1311 (Fed. Cir. 2011). There, a five-member panel affirmed the district court's decision to deny transfer, and in doing so, held that "[g]iven that both parties were incorporated in Delaware, they had both willingly submitted to suit there, which weighs in favor of keeping the litigation in Delaware." *Id.* at 1332 (emphasis added).

In light of *Micron Technology*'s express reliance on the parties' state of incorporation, Zynga's contention that this Court should disregard the fact that both parties are incorporated in Delaware, and thereby give Agincourt's choice of forum less than paramount deference, is baseless. The law in the District of Delaware remains unchanged: a Delaware company's choice to file suit in Delaware is entitled to paramount consideration, and that choice will not be lightly disturbed.

## II.   THE PRIVATE INTEREST FACTORS DO NOT WEIGH STRONGLY IN FAVOR OF TRANSFER.

In order to overcome the paramount consideration afforded a plaintiff's choice of forum, a defendant must show that "the balance of convenience . . . is strongly in favor of defendant." *Schutte*, 431 F.2d at 25 (emphasis added). Merely showing that "the factors are evenly balanced or weigh only slightly in favor of transfer" is insufficient to satisfy this heavy burden. *CheckPoint Software*, 28 F. Supp. 2d at 477. Because the private interest factors in this case are neutral, Zynga has failed to satisfy its burden.

Zynga's motion, although designed to appear as a robust analysis of several independent and exclusive elements, essentially repeats three basic allegations: (1) a majority of Zynga's employees work at Zynga's San Francisco office; (2) relevant documents and data are "located in or accessible from" Zynga's San Francisco office; and (3) a handful of people identified by Zynga as potential third-party fact witnesses are located in California. (Zynga's Br. 3–4.) In Zynga's view these three allegations constitute no less than six private-interest factors weighing in favor of transfer. However, as this Court has recognized, allegations such as Zynga's implicate really only three private interest factors: (1) convenience of the witnesses; (2) location of books and records; and (3) convenience of the parties. *See Affymetrix*, 28 F. Supp. 2d at 197 (holding that "affording weight to [certain] factors for their own sake runs the risk of double-counting them thereby compromising the transfer analysis"); *Carl Zeiss Meditec, Inc. v. Optovue, Inc.*, C.A. No. 10-084-GMS, 2011 WL 1419714, at *2 n.3 (D. Del. Apr. 13, 2011) ("The first three of these private interest factors collapse into other portions of the *Jumara* analysis. Thus, the court will consider them in the context of the entire inquiry only."). Here, these factors fall well short of establishing the "strong" showing of convenience required to warrant transfer.

A.    **The convenience and availability of the witnesses is neutral.**

Of all the factors Zynga analyzes in its brief, it gives the convenience of the witnesses the most attention. (Zynga's Br. 10–11.) Zynga's argument on this point focuses on two types of potential witnesses: (1) various Zynga employees (party witnesses), and (2) the inventors and a prior assignee of the patents in suit (non-party witnesses).

1.    **Zynga's employees are party witnesses whose convenience receives no weight.**

It is a well-established principle of venue-transfer analysis that party witnesses—employees or persons otherwise under the control of one of the parties—"carry no weight in the balance of convenience." *Affymetrix*, 28 F. Supp. 2d at 203. This is because the convenience of

the witnesses is a relevant consideration "only to the extent that the witnesses may actually be unavailable for trial in one of the fora," *Jumara*, 55 F.3d at 879. Since "each party is able, indeed, obligated to procure the attendance of its own employee," there is no concern that such witnesses will be unavailable for trial. *Affymetrix*, 28 F. Supp. 2d at 203. Therefore, the residence of the Zynga officers and employees who might testify at trial is irrelevant to the Court's venue-transfer inquiry.

Nevertheless, as with its argument to diminish the deference afforded to Agincourt's choice of forum, Zynga again relies on an erroneous interpretation of the Federal Circuit's decision in *Link_A_Media*. This time Zynga argues that *Link_A_Media* compels the Court to disregard the long line of cases holding that the convenience of party witnesses receives no consideration. (Zynga's Br. 12 (citing *In re Link_A_Media*, 662 F.3d at 1224).) Not only does this argument misconstrue *Link_A_Media*, but it also fails to account for earlier controlling case law.

The Court need look no further than the plain language of the opinion in *Link_A_Media* to see that Zynga's contention regarding party witnesses is baseless. The following is the entirety of the Court's analysis of the convenience of the witnesses:

> The district court also refused to consider two of the private interest factors in a Third Circuit venue inquiry: the convenience of the witnesses and the location of the books and records. Rather than analyze the merits of the parties' arguments relating to these factors, the district court stated that these issues are "outdated, irrelevant, and should be given little weight, if any, except for those rare exceptions where truly regional defendants are litigating." While advances in technology may alter the weight given to these factors, it is improper to ignore them entirely.

*In re Link_A_Media*, 662 F.3d at 1221 (citations omitted). At no point does the Federal Circuit discuss the distinction between party and non-party witnesses—and any contention that *Link_A_Media* conclusively changes the law in that area is therefore incorrect. *See Altera*, 2012 WL 297720, at *9 (noting that "the weight to be accorded to concerns about convenience for the

witnesses varies depending on the type of witness at issue"); *Geotag*, 2012 WL 114128, at \*3 n.2 ("I do not understand the Federal Circuit to have altered the Third Circuit's focus on the issue being not so much where the witnesses and evidence are, but whether they can be produced in court.").

Notwithstanding *Link_A_Media*, Zynga's argument again is plainly contradicted by the Federal Circuit's earlier decision in *Micron Technology*, in which the court held that the district court was "correct" in concluding that "most of the witnesses were employees of or consultants to the parties and could therefore be encouraged to testify in either forum, even if they could not be compelled to testify in Delaware." *Micron Tech.*, 645 F.3d at 1332. In light of *Micron Technology* and the absence of any express language to the contrary in *Link_A_Media*, the decisions disregarding the residence of party witnesses remain good law, and therefore, where Zynga's officers and employees reside is irrelevant to this case.

Furthermore, even if the location of party witnesses was relevant to transfer analysis, Zynga has failed to establish that California would, in fact, be a more convenient forum for the Zynga employees who might actually be called to testify. Although Zynga originally claimed, based on the declaration of one its employees submitted with its opening brief, that "the people . . . most likely to testify regarding the [accused] games will be located in Northern California" (Pringle Decl. ¶ 7), subsequent discovery has contradicted that assertion. ██████████████

██████████████████████████████████████████████

██████████████████████████████████ Moreover, even considering the five California-based employees that Zynga claims are "likely to testify," none were involved in the design or engineering of eight of the twelve accused games. (Pringle Dep. 39:18–40:18.) Indeed, those five employees were selected not by Zynga's declarant, William Pringle, but rather by a paralegal who works at Zynga. Further, at his Rule 30(b)(6) deposition, Mr. Pringle testified

11

that he could not remember this paralegal's name, but that he believed her basis for identifying these five employees was not their substantive involvement with any of the Accused Games, but instead, the fact that they had been helpful to Zynga in prior litigations involving other patents. (Pringle Dep. 115:11–18.)

**2.     The inventors and prior assignee are willing witnesses.**

Though Zynga commits considerable portions of its argument and evidence attempting to establish where the named inventors and prior assignee of the patents reside, at no point does Zynga suggest that they are unwilling witnesses. To the contrary, all five inventors have executed declarations stating that they are willing to travel to Wilmington to testify as witnesses in an evidentiary hearing or at trial to the same extent as if they were subject to a subpoena issuing from this Court. (M. Kelly Decl. ¶ 4; B. Kelly Decl. ¶ 6; Petermeier Decl. ¶ 3; Kroeckel Decl. ¶ 3; Link Decl. ¶ 3.) And one of those inventors is also prepared to appear as a representative of Bally Technologies—the parent company to Arcade Planet, the patents' prior assignee. (B. Kelly Decl. ¶ 6.)[5]

Furthermore, ███████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████   █   ████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████

---

[5] While it is true that "even previously cooperative witnesses may become reluctant participants," *Affymetrix*, 28 F. Supp. 2d at 205, it is equally true that witnesses often move residences. Yet, when courts conducting venue analysis ask whether a particular witness is subject to a court's subpoena power, they base their determination on the witness's residence at the time of the inquiry, without regard to the possibility that the witness may move outside of subpoena range before trial. *E.g., id.* A witness's present intention to willingly appear in the plaintiff's chosen forum, attested to by sworn declaration, should enjoy a similar presumption of permanence as the witness's amenability to subpoena in the defendant's preferred forum.

Finally, even if all the nonparty witnesses identified by Zynga were not willing to travel to and testify in Delaware, Zynga simply overstates the importance of witnesses' presence within the subpoena range of the trial court. As one court in this District has explained, "the extent of the Court's subpoena power is relevant only to ensuring that witnesses come to Delaware to testify *at trial*. Every witness's deposition testimony can be compelled by some court." *Altera*, 2012 WL 297720, at *10 (citing Fed. R. Civ. P. 45(b)(2)). Because "[i]t is overwhelmingly likely . . . that any federal civil litigation—including the instant case—will not actually go to trial," the Court's ability to compel witnesses' attendance at trial will likely be irrelevant. *Id.* Moreover, even if this case did go to trial and the nonparty witnesses went back on their sworn declarations to attend trial, their deposition testimony—while "not a complete substitute for live trial testimony"—"is a fallback that in almost all instances will prevent a miscarriage of justice." *Id.*

**B.    Zynga has failed to show any inconvenience regarding its books and records.**

Although "the location of books and records" has long been one of the factors courts consider in deciding motions to transfer venue, it is relevant only "to the extent that the files could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879. As this and most other courts have repeatedly recognized, "'recent technological advances have reduced the weight of this factor to virtually nothing.'" *CheckPoint Software*, 797 F. Supp. 2d at 485 (quoting *Affymetrix*, 28 F. Supp. 2d at 208); *accord Nihon Tsushin Kabushiki Kaisha v. Davidson*, 595 F. Supp. 2d 363, 372 (D. Del. 2009); *Auto. Techs. Int'l, Inc. v. Am. Honda Motor Co., Inc.*, No. 06-187 GMS, 2006 WL 3783477, at *2 (D. Del. Dec. 21, 2006); *ADE Corp. v. KLA–Tencor Corp.*, 138 F. Supp. 2d 565, 571 (D. Del. 2001); *Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 200 (E.D. Pa. 2008); *see* 15 Charles Alan Wright et al., *Federal Practice and Procedure* § 3853 (3d ed. 2007) ("[S]ince most records and documents now can be transported easily or exist in miniaturized or electronic form . . . their location is entitled to little weight.").

13

Here, Zynga has not shown that the location of its books and records should be given any weight. Rather, Zynga merely asserts that its "development documents, operations documents, and other documents and materials associated with the Accused Games are located in or accessed from Zynga's offices in San Francisco, not in Delaware." (Zynga's Br. 13 (emphasis added) (citing Pringle Decl. ¶ 15).) Of course, that Zynga's books and records are accessible from San Francisco says nothing about the cost of making them accessible from other locations. Given that Zynga's chief game designer works in Baltimore, ████████████████████████████ ██████████████████ and more than half of Zynga's ten most popular games were created in studios outside of San Francisco (Shank Decl. ¶¶ 6–12, Exs. E–K.), it is quite likely that Zynga's documents and records are already easily accessible in many locations around the country. Furthermore, given that Zynga can identify neither the volume of documents to be transferred to the trial forum in this case (Pringle Dep. 80:20–23), nor the cost of transferring such documents (Pringle Dep. 81:13–22), Zynga's previous assertion that "it would be extremely burdensome and expensive for Zynga to have to transfer or move all the relevant documents" rings hollow (Pringle Decl. ¶ 15).

Unsurprisingly, Zynga again turns to *Link_A_Media* in an attempt to convince this Court to abandon long standing case law. (Zynga's Br. 12–13 (citing *In re Link_A_Media*, 662 F.3d at 1224).) And again, Zynga's argument fails. Despite Zynga's contentions to the contrary, the *Link_A_Media* court did not disapprove of the almost universal view that technology has vastly reduced the weight attributed to the location of books and records. Rather, the court in *Link_A_Media* held only that it was improper to entirely ignore both the location of books and records and the convenience of the witnesses. *In re Link_A_Media*, 662 F.3d at 1224.

14

Unable to find support for its position in *Link_A_Media*, Zynga cites *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009),[6] in which the Federal Circuit, applying Fifth Circuit law, reversed the district court's decision to deny transfer. *Id.* at 1341. Zynga's reliance on *Genentech*, however, is misplaced because Fifth Circuit law is not controlling in this case. *See Geotag*, 2012 WL 114128, at *6 n.13 (D. Del. Jan. 13, 2012) ("The Federal Circuit's numerous transfer cases arising from the Fifth Circuit are not controlling as the Federal Circuit interprets the law of the Circuit in which the District Court sits."). In fact, *Genentech*'s holding—that the location of books and records is always relevant regardless of actual convenience—directly contradicts the Third Circuit's express proviso that the location of books and records is relevant only "to the extent that the files could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879; *see Geotag*, 2012 WL 114128, at *6 n.13 ("The law of the [Fifth and Third] Circuits in regard to how to conduct a transfer analysis is different in a number of regards."). *Genentech*, therefore, has no applicability here.

To be sure, it was once true that physical distance alone made sharing books and records more difficult, and so it makes sense that venue transfer analysis historically equated distance with inconvenience and cost. However, the widespread use of technologies like the internet, e-mail, and electronic document imaging has in most cases eliminated the basis for this equivalence. As one district court put it,

> The Court could no more ignore the fact that in the modern era documents, photographs, and videos can be sent across the country with the click of a button than it could ignore the degree to which the jet aircraft and the interstate highway system have facilitated the rapid movement of people. To hold otherwise would transform this factor from one focused on the ease with which evidence may be accessed, to one focused strictly on the geographical location of proof.

---

[6] Zynga also cites *In re Nintendo Co., Ltd.*, 589 F.3d 1194 (Fed. Cir. 2009), for this proposition, but that case simply applied the rule established in *Genentech* and, therefore, need not be discussed separately. *See In re Nintendo*, 589 F.3d at 1199 (citing *In re Genentech*, 566 F.3d at 1345).

*Moss v. Lockheed Martin Corp.*, No. 3:10-cv-1659-M, 2011 WL 197624, at *4 (N.D. Tex. Jan. 18, 2011). In short, Zynga cannot meet its burden on the books-and-records factor simply by pointing out that the courthouse in San Francisco is closer to Zynga headquarters than the courthouse in Delaware. Because that is all Zynga has done here, this factor is neutral.

      **C.**    **Due to its relative physical and financial condition, Zynga cannot demonstrate that Delaware is an inconvenient forum.**

      Zynga's baseless arguments regarding the convenience of the parties warrant only brief analysis. In the Third Circuit, this inquiry focuses on "the convenience of the parties <u>as indicated by their relative physical and financial condition</u>." *Jumara*, 55 F.3d at 879 (emphasis added). Though local or regional businesses may often face particular and unique problems defending suits across the country, "substantial corporations" that operate in the national and international markets must show "some sort of 'unique or unexpected' burden in order to demonstrate that Delaware is an inconvenient forum." *Affymetrix*, 28 F. Supp. 2d at 202.

      Zynga undoubtedly is a "substantial corporation." It recently raised approximately $1 billion from its initial public offering, valuing the company at roughly $7 billion. (Shank Decl. ¶ 14, Ex. M.) Furthermore, Zynga operates in national and international markets; not only does Zynga have eleven domestic and eight overseas offices, but it also sells a product that can be used "from anyplace in the world an internet connection can be maintained," including Delaware. (Zynga's Br. 14–15.) Consequently, Zynga must show some sort of unique or unexpected burden to demonstrate that Delaware is an inconvenient forum. But Zynga estimates that, if this case remains in Delaware, it will incur **as little as $10,000**, and no more than $100,000, in costs it would not incur if this case was transferred to San Francisco. Aside from those <u>relatively</u> miniscule costs, the only burdens Zynga identifies are that most of it employees and books and records are located in San Francisco. Such mundane concerns are hardly unique or unexpected, so this factor is neutral.

### III.    THE PUBLIC-INTEREST FACTORS DO NOT WEIGH STRONGLY IN FAVOR OF TRANSFER.

Having failed to meet its burden on any of the private interest factors, Zynga relies on two of the public interest factors to support transfer: (1) practical considerations making trial easier, quicker, or less expensive; and (2) the local interest in having localized controversies decided at home. Neither factor warrants transfer.

Regarding the first, Zynga argues that transferring the case to the Northern District of California would reduce the costs of litigation by eliminating the need for local counsel. Although the District of Delaware, unlike the Northern District of California, requires local counsel, the additional expense of retaining local counsel is well within the means of a large and sophisticated party like Zynga, and so this factor falls well short of weighing strongly in favor of transfer. *See CheckPoint Software*, 797 F. Supp. 2d at 486 (holding that "this factor favors transfer . . . only slightly" because, "in light of the size of the parties and the magnitude of their dispute," the parties "are more than capable of bearing th[e] additional expense [of retaining local counsel]"); *see also Schutte*, 431 F.2d at 25 ("[U]nless the balance of convenience of the parties is <u>strongly</u> in favor of defendant, the plaintiff's choice of forum should prevail." (emphasis added)).

Zynga's local-interest argument is similarly unsupportable. "[I]n patent infringement cases the local interest factor is typically neutral 'because patent issues do not give rise to a local controversy or implicate local interests.'" *CheckPoint Software*, 797 F. Supp. 2d at 486 (citing *TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D Del. 2008)). Furthermore, Delaware's interest "in adjudicating disputes involving companies incorporated in Delaware" is "substantial and must be afforded at least equal weight" as that afforded to the interest of the Northern District of California, where Zynga is based. *Id.* (citing *Autodesk Can.*

17

*Co. v. Assimilate, Inc.*, No. 08-587-SLR-LPS, 2009 WL 3151026, at *9 (D. Del. Sep. 29, 2009)).

Therefore, this factor does not weigh in favor of transfer.

## CONCLUSION

According to long-standing precedent from courts in the Third Circuit and from the Federal Circuit itself, Agincourt's choice to file suit in its state of incorporation is entitled to paramount consideration and, therefore, will not be disturbed unless the private and public interest factors weigh strongly in favor of transfer. Here they do not. Therefore, Agincourt respectfully requests that the Court deny Zynga's motion to transfer this case to the Northern District of California.

Respectfully submitted,

Dated: March 1, 2012                    FARNAN LLP

                            By:    /s/ Brian E. Farnan
                                   Joseph J. Farnan, Jr. (Bar No. 100245)
                                   Brian E. Farnan (Bar No. 4089)
                                   919 North Market Street, 12th Floor
                                   Wilmington, DE 19801
                                   302.777.0300
                                   302.777.0301 (fax)
                                   farnan@farnanlaw.com

OF COUNSEL:

William Christopher Carmody (NY State Bar No. 4539276)
Tibor L. Nagy (NY State Bar No. 4508271)
SUSMAN GODFREY LLP
560 Lexington Avenue, 15th Floor
New York, New York 10022
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
bcarmody@susmangodfrey.com
tnagy@susmangodfrey.com

David D. Shank (TX State Bar No. 24075056)
SUSMAN GODFREY LLP
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone: (214) 754-1935
Facsimile: (214) 754-1933
dshank@susmangodfrey.com

                            Attorneys for Plaintiff Agincourt Gaming, LLC